23-MJ-5115-JGD

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A CRIMINAL COMPLAINT

I, Thomas M. Menino, Jr., being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Boston Police Department Detective and have been employed with the Boston Police Department since 1994, when I graduated from the Boston Police Academy. In my role as a Boston Police Department officer and then detective, I have investigated numerous crimes and have utilized various investigative techniques including conducting surveillance, interviewing witnesses and defendants, and applying for and executing search and arrest warrants. I am currently detailed to the Federal Bureau of Investigation (FBI) as a Federal Task Force Officer, a role I have had for almost six years. I serve as an Airport Liaison Agent at Boston Logan International Airport (BOS), where I investigate violations of federal law in the airport environment and onboard aircraft. In my capacity as an Airport Liaison Agent, I work with other law enforcement agencies at BOS, including the Massachusetts State Police (MSP) and Federal Air Marshal Service (FAMS). My additional training to become a Task Force Officer included a week-long training in Quantico, Virginia, as well as annual training requirements on various topics related to federal criminal law enforcement.

2. I make this affidavit in support of a criminal complaint charging Francisco Severo TORRES ("TORRES"), YOB 1990, with interference and attempted interference with flight crew members and attendants using a dangerous weapon, in violation of 49 U.S.C. § 46504.

3. I am aware that, under 49 U.S.C. 46501(2)(A), Special Aircraft Jurisdiction of the United States applies to any civil aircraft of the United States while the aircraft is in flight. An "aircraft in flight" is defined in Section 46501(1)(A) of Title 49 as an aircraft from the moment all

external doors are closed following boarding through the moment when one external door is opened to allow passengers to leave the aircraft.

4.      I am also aware that 49 U.S.C. § 46504 makes it unlawful for any individual on an aircraft in the special jurisdiction of the United States to assault or intimidate, or attempt to assault or intimidate, a flight crew member or flight attendant of the aircraft, that results in the interference with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties.

5.      The facts in this affidavit come from my personal involvement in this investigation, including interviews of witnesses including crew members and passengers, as well as my conversations with other members of law enforcement and my review of records. In submitting this affidavit, I have not included every fact known to me about this investigation. Instead, I have only included facts that I believe are sufficient to establish probable cause.

**PROBABLE CAUSE**

6.      On March 5, 2023, while onboard United Airlines Flight 2609 en route from Los Angeles, California, to Boston, Massachusetts, TORRES attempted to open one of the aircraft's emergency exit doors while in flight and then attempted to stab a flight attendant in the neck with a sharp metal object. According to United Airlines, TORRES was assigned to and seated in seat 20E.

7.      Flight 2609 departed Los Angeles at approximately 8:20 a.m. Pacific Time. Approximately 45 minutes prior to landing, the flight crew received an alarm in the cockpit that the starboard side door number 2, which is located at galley number 2 between the first class and

coach sections of the aircraft,[1] was disarmed. The Captain notified Flight Attendant Number 2 ("FA2")[2] of the alarm. FA2 inspected the starboard side door number 2 and found that the door locking handle had been moved out of the fully locked position. The handle had been moved approximately ¼ of the way towards the unlocked position. The emergency slide arming lever had also been moved to the "disarmed" position. FA2 moved the locking handle back to the fully locked position and armed the emergency slide. She then reported this to both the Captain and to Flight Attendant Number 1 ("FA1").

8. The Captain instructed FA1 to investigate the incident. FA1 went to galley number 2 and spoke with Flight Attendant Number 5 ("FA5"). FA5 informed FA1 that he had observed the passenger in seat 20E[3] (TORRES) in galley 2 near starboard side door number 2 and believed that TORRES had tampered with the door. FA1 then approached TORRES and confronted him about tampering with the door. TORRES asked FA1 if there were cameras showing that he had tampered with the door. FA1 then returned to galley 2 and notified the Captain that he felt TORRES posed a threat to the aircraft and that the Captain needed to land the aircraft as soon as possible.

9. Shortly thereafter, TORRES got out of his seat and approached galley 2 where both

---

[1] Galley number 2 is located in front of row 7 in the coach section of the aircraft. At galley number 2, there is a kitchen area on the starboard side and a bathroom on the port side. Directly behind the kitchen area and bathroom are two exit doors, one on each side of the airplane.

[2] The identities of the flight crew, flight attendants, and passengers described in this Affidavit are known to law enforcement, but withheld here to protect their privacy.

[3] Row 20 is located six rows behind Row 7 on the airplane and is adjacent to an exit door. Seat 20E is the middle seat on the starboard side of that exit row.

FA1 and FA5 were located. FA1 and FA5 were standing in the aisle. FA5 saw TORRES mouthing something that he could not hear. TORRES had a shiny object in his right hand. When TORRES got close to FA5 he thrust the shiny object at FA5 with a stabbing motion. FA5 felt the object in TORRES' hand hit him on his shirt collar and tie three times. Passengers tackled TORRES to the ground and he was restrained with the assistance of flight crew.

10. According to the flight crew and flight attendants, TORRES's actions interfered with flight crew's and flight attendants' ability to attend to their typical duties, as they investigated the cause of the cockpit alarm, fended off TORRES's attack, and ultimately assisted in restraining TORRES.

11. Interviews with passengers revealed the following additional information.

12. Passenger 1 was seated in seat 7C.[4] Passenger 1 saw TORRES come out of the bathroom at galley 2 and start pacing back and forth in galley number 2. TORRES then returned to his seat. Later, Passenger 1 saw TORRES with something shiny in his right hand. During the confrontation described above, Passenger 1 observed that TORRES threw a punch at FA5 with his left hand and made a motion toward FA5's neck with his right hand.

13. Passenger 2 was seated in seat 20D, next to TORRES. During the flight attendants' safety briefing prior to takeoff, TORRES asked Passenger 2 where on the safety card it showed where the door handle was located. Passenger 2 did not know the answer to TORRES's question.

14. Passenger 3 was seated behind TORRES in seat 21E. Passenger 3 observed FA1 confront TORRES about tampering with the door. TORRES grew agitated. When TORRES later got up from his seat, Passenger 3 followed him. Passenger 3 observed TORRES try to stab FA5.

---

[4] Seat 7C is the aisle seat on the port side, directly behind the bathroom and across from the starboard side exit door.

Passenger 3 took TORRES down to the floor and restrained him with the help of fellow passengers.

15. The sharp object used to attack FA5 was located and determined to be the handle portion of a metal spoon, from which the bowl portion had been broken off.

16. MSP Troopers met Flight 2609 upon its arrival to Boston at approximately 4:15 p.m. EST. Uniformed MSP Troopers located and removed TORRES from the aircraft and detained him at the MSP airport barracks.

17. TORRES was interviewed at the MSP airport barracks. The interview was recorded. TORRES was advised of his *Miranda* rights, waived them, and agreed to speak with investigators. During the voluntary interview, among other statements, TORRES made certain admissions, described below. The statements below are summary in nature and not direct quotes.

18. TORRES told investigators that he went into the bathroom on the plane and broke a spoon in half to make a weapon. When he came out of the bathroom TORRES went into the galley, disarmed the door, and tried to open it unsuccessfully. TORRES had gotten the idea to open the emergency exit door and jump out of the plane. TORRES admitted to knowing that if he opened the door many people would die. TORRES stated that soon after that attempt, he was confronted by a couple of flight attendants. TORRES advised that to defend himself, he tried to stab one of the flight attendants in the neck three or four times. TORRES stated that he believed the flight attendant was trying to kill him, so he was trying to kill the flight attendant first.

## CONCLUSION

19.     Based on the foregoing, I submit that there is probable cause to believe that, on or about March 5, 2023, TORRES, being an individual on an aircraft in the special aircraft jurisdiction of the United States while onboard United Airlines flight 2609 en route from Los Angeles, California, to Boston, Massachusetts, did violate 49 U.S.C. § 46504, interference and attempted interference with flight crew and attendants using a dangerous weapon.

*Thomas M. Menino Jr.*
Thomas M. Menino Jr.
FBI Task Force Officer

Subscribed and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 this 6th day of March 2023.

*Judith Gail Dein*
HON. JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS